IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION


RALPH EDWARD WESTER,
        Plaintiff,

vs.                                      Case No. 5:05cv160/SPM/EMT

WILLIE RAINES, et al.,
        Defendants.
_____/

**ORDER**

This cause is before the court on Plaintiff's second amended civil rights complaint filed pursuant to 42 U.S.C. § 1983[1] (Doc. 25). Leave to proceed in forma pauperis has been granted (Doc. 9). From a review of the complaint, it is evident that the facts as presented fail to support a viable claim for relief under section 1983 as to one or more of the named Defendants. Therefore, the court will allow Plaintiff a final opportunity to clarify his allegations in a third amended complaint.

At all times relevant to his complaint, Plaintiff was an inmate housed at the Federal Correctional Institution in Marianna, Florida (FCI). He names seven Defendants in this action: FCI Warden James Barron and former Warden Monica Wetzel; Eddie Snell and Don Bart, FCI unit managers; Willie Raines, an FCI unit counselor; R.E. Holt, the southeast regional Administrative Remedy Coordinator for the Bureau of Prisons (BOP); and Harry Lappin, the Administrative Remedy Coordinator for the BOP (Doc. 25 at 1–2).

___

[1] The court construes Plaintiff's complaint as brought under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971). Bivens recognized a private right of action for money damages against federal actors that engaged in alleged violations of the Constitution or laws of the United States. 403 U.S. at 397, 91 S. Ct. at 2005.

Plaintiff states that he is a non-smoker and also suffers from asthma (*id.* at 9). He contends that he was exposed to high levels of Environmental Tobacco Smoke (ETS) while housed at FCI Marianna, and he lists the places where the exposure occurred (*id.*). One, the porch areas outside the inmate housing units were designated as smoking areas at all times (*id.*). "Thus, [Plaintiff] was forced to inhale second hand smoke from the average 10 or more smokers when he visited the porch area to speak" or crossed the porch to exit or enter the inmate housing unit (*id.*). Plaintiff estimates he spent approximately an hour a day on the unit porch (*id.* at 9–10). Two, prison officials "designated the fenced in commissary pen area as a smoking area," and Plaintiff estimated that he was exposed to ETS in that area for approximately forty-five minutes a week (*id.* at 10). Three, Plaintiff was exposed to ETS in the inmate cafeteria line, which usually requires a fifteen to twenty minute wait prior to entering the cafeteria (*id.*). Four, the porch area of the educational building was designated a smoking area, and Plaintiff was exposed to ETS in that area for approximately five minutes a week (*id.* at 11). Five, prison officials designated the entrances to the leisure center and gym of the recreation department, as well as the exercise room as smoking areas (*id.*). Plaintiff states that he "suffered at least hours of second hand smoke every weekend entering, exiting and visiting recreation" (*id.*). Six, the Unicor entrances and break areas were designated as smoking areas, and Plaintiff was "forced to share the caged in area with smoking inmates and officers" for about fifteen to twenty minutes during lunch breaks and during two fifteen-minute breaks provided during work hours each day (*id.* at 12). In sum, Plaintiff has alleged that he was exposed to ETS in these areas for approximately twenty hours a week.

Plaintiff also alleges that he was exposed to ETS when he was inside his "non-smoking" unit, because other inmates routinely smoked there without being subject to discipline (*id.*). Plaintiff complained about this disregard of the non-smoking policy to Defendants Raines, Snell, and Bart, but the Defendants told him that "he must act as an informer to point out those who were smoking in the units" (*id.*). Plaintiff refused to be an informant; therefore, he claims the policy was never enforced by Defendants Snell, Bart, or Raines. In addition, Defendants "failed to respond to Plaintiff's complaints about all of the areas listed above designated as smoking areas" (*id.*). In his formal complaint to the BOP, Plaintiff alleged that "BOP officials at FCI Marianna were showing

deliberate indifference to his health by intentionally violating BOP policy statement 1640.03"[2] (*id.* at 13). On September 18, 2004, Defendant Barron denied Plaintiff's formal complaint (*id.*). Plaintiff states that "The warden failed to recognize that he was allowing smoking in the corridor of buildings and inside of areas that possessed roofs that were secured by steel bars and mesh like fencing" (*id.*). Plaintiff contends that the designation of each area listed above as a "smoking area" violates BOP policy statement 1640.04 (*id.*).

On November 1, 2005, Plaintiff filed a Regional Administrative Appeal, "alleging that he was being subjected to high levels of ETS in violation of his Eighth Amendment Constitutional right," but the Regional director denied Plaintiff's appeal based on the warden's response (*id.* at 13–14). On December 14, 2005, Plaintiff filed an appeal to the Central Office, but the Administrator at the Central Office of the BOP rejected Plaintiff's claim and "failed to investigate Plaintiff's claim that FCI Marianna Officials failed to comply with PS. 1640.04" (*id.* at 14).

Plaintiff alleges that as a result of his exposure to ETS at FCI, he began to suffer from asthma attacks on a regular basis and now must use an inhaler on a regular basis (*id.*). Plaintiff "contends that had he not been exposed to the high levels of ETS, he would not have suffered the level of discomfort that he was forced to suffer" while he was incarcerated at FCI Marianna (*id.*).

Plaintiff claims that his exposure to high levels of ETS while housed at FCI Marianna violated the Eighth Amendment (*id.* at 9). Specifically, he makes the following claims: 1) Defendants Rains, Snell, and Bart are "liable for deliberately feigning ignorance as to the Marianna Policy of violating" P.S. 1640.04 and for their "deliberate indifference to Plaintiff's present and future health"; 2) Defendants Barron and Wetzel "and other unknown Wardens that supervised FCI Marianna" are liable for "deliberately creat[ing] policies" that "directly violated the clean air act in a blatant indifference to [Plaintiff's] right to be free from high exposure of ETS"; and 3) Defendants Lappin and Holt are liable for "deliberately and intentionally allow[ing] FCI Marianna Officials to violate P.S. 1640" (*id.* at 16–17). Plaintiff also claims that all of the Defendants are liable for

---

[2]Plaintiff has listed program statement 1640.03, but the court notes that the correct program statement number is 1640.04 § 551.160 (*see* http://www.bop.gov/DataSource/execute/dsPolicyLoc).

Case No.: 5:05cv160/SPM/EMT

denying his freedom of speech: "Plaintiff's ability to speak in a non-smoking environment was denied to him" (*id.*). As relief, Plaintiff seeks compensatory and punitive damages (*id.*).

Initially, although Plaintiff used the form for use in Section 1983 cases, he failed to properly complete the form. Indeed, page 8 is missing entirely. This is not acceptable. Rule 5.1(J) of the Local Rules for the Northern District of Florida provides that pro se complaints filed under Section 1983 shall not be considered by the court unless the appropriate form has been properly completed and filed by the litigant. The use of a prescribed form was adopted for reasons of administrative convenience. This court, with its large volume of pro se actions, saves valuable time if it is not required to decipher lengthy and often unintelligible complaints. This saving would be lost if Plaintiff were allowed to fill in the form with a reference to an attachment instead of completing the form itself. In light of the administrative benefits derived from the use of the form, Plaintiff shall be required to fully complete the form, even if he wishes to submit an attachment with additional facts or claims.

Next, Plaintiff's First Amendment claim is frivolous and subject to dismissal. While the First Amendment generally prevents the government from proscribing speech because of disapproval of the ideas expressed, R.A.V. v. St. Paul, 505 U.S. 377, 382, 112 S. Ct. 2538, 2542, 120 L. Ed. 2d 305 (1992), it does not require the government to provide smoke-free spaces in which prisoners can express themselves. Plaintiff has not alleged, nor do the facts suggest, that any of the Defendants restricted the content of his speech, his use of common areas, or his ability to speak. Instead, Plaintiff has alleged only that Defendants, through their policies, denied his "ability to speak in a non-smoking environment." Indeed, Plaintiff admits that he spent many hours each week in the designated smoking areas. Even if Plaintiff spent less time in these social areas than he would have without the ETS, Plaintiff has failed to state a cognizable claim based on violation of the First Amendment. The First Amendment prohibits governmental restraint on speech, not self-imposed restraint. *See* Leathers v. Medlock, 499 U.S. 439, 449, 111 S. Ct. 1438, 1444–45, 113 L. Ed. 2d 494 (1991) ("The constitutional right of free expression is . . . intended to remove governmental restraints from the arena of public discussion, putting the decision as to what views shall be voiced largely into the hands of each of us . . . in the belief that no other approach would comport with the premise of individual dignity and choice upon which our political system rests.") (quoting Cohen

v. California, 403 U.S. 15, 24 (1971)) (omissions in original).  Plaintiff should drop this claim from his third amended complaint.

Regarding Plaintiff's Eighth Amendment claim, Plaintiff is advised that the Eighth Amendment requires, at the minimum, that all claims challenging conditions of confinement must demonstrate an infliction of pain "without any penological purpose" or an "unquestioned and serious deprivation of basic human needs" such as medical care, exercise, food, warmth, clothing, shelter, or safety.  Rhodes v. Chapman, 452 U.S. 337, 347, 101 S. Ct. 2392, 2399, 69 L. Ed. 2d 59 (1981); *see also* Hamm v. DeKalb County, 774 F.2d 1567, 1571–72 (11th Cir. 1985).  Furthermore, "conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional.  To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society."  *Id.*

The Supreme Court has developed a two-part analysis governing Eighth Amendment challenges to prison conditions.  Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004).

> First, under the "objective component," a prisoner must prove that the condition he complains of is sufficiently serious to violate the Eighth Amendment.  Hudson v. McMillian, 503 U.S. 1, 8, 112 S. Ct. 995, 999, 117 L. Ed. 2d 156 (1992).  The challenged condition must be "extreme."  *Id.* at 9, 112 S. Ct. at 1000.  While an inmate "need not await a tragic event" before seeking relief, Helling v. McKinney, 509 U.S. 25, 33, 113 S. Ct. 2475, 2481, 125 L. Ed. 2d 22 (1993), he must at the very least show that a condition of his confinement "pose[s] an unreasonable risk of serious damage to his future health" or safety, *id.* at 35, 113 S. Ct. at 2481.  Moreover, the Eighth Amendment requires more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to [the challenged condition of confinement].  It also requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk.  In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate. *Id.* at 36, 113 S. Ct. at 2482.  The Eighth Amendment thus guarantees that prisoners will not be "deprive[d] . . . of the minimal civilized measure of life's necessities."  Rhodes, 452 U.S. at 347, 101 S. Ct. at 2399.

Chandler, 379 F.3d at 1289–90.  The objective prong is concerned with both the "severity" and the "duration" of the prisoner's exposure to the alleged unconstitutional condition.  *Id.* at 1295.  "[M]ere discomfort, without more, does not offend the Eighth Amendment."  *Id.*

The second part of the two-part analysis is the "subjective component":

> [T]he prisoner must show that the defendant prison officials "acted with a sufficiently culpable state of mind" with regard to the condition at issue. Hudson, 503 U.S. at 8, 112 S. Ct. at 999 (marks and citation omitted). The proper standard is that of deliberate indifference. Wilson v. Seiter, 501 U.S. 294, 303, 111 S. Ct. 2321, 2327, 115 L. Ed. 2d 271 (1991). Negligence does not suffice to satisfy this standard, *id.* at 305, 111 S. Ct. at 2328, but a prisoner need not show that the prison official acted with "the very purpose of causing harm or with knowledge that harm [would] result," Farmer v. Brennan, 511 U.S. 825, 835, 114 S. Ct. 1970, 1978, 128 L. Ed. 2d 811 (1994). In defining the deliberate indifference standard, the Farmer Court stated: [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Id.* at 837, 114 S. Ct. at 1979. Furthermore, the official may escape liability for known risks "if [he] responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844, 114 S. Ct. at 1982–83.

Chandler, 379 F.3d at 1289–90.

The Eleventh Circuit has recently addressed an Eighth Amendment claim based on exposure to ETS. Relying on the decision of the Supreme Court in Helling v. McKinney, 509 U.S. 25, 35, 113 S. Ct. 2475, 125 L. Ed. 2d 22 (1993), the Eleventh Circuit found that a prisoner can state a cause of action by "'alleging that [prison officials] have, with deliberate indifference, exposed him to levels of ETS that pose an unreasonable risk of serious damage to his future health.'" Kelley v. Hicks, 400 F.3d 1282, 1284 (11th Cir. 2005) (citing Helling, 509 U.S. at 35). Regarding the objective factor, the prisoner must show he is personally being exposed to unreasonably high ETS levels, and the court may consider whether he remains housed in the offending environment and whether the prison has enacted a formal smoking policy. *Id.* The objective factor further considers:

> a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to ETS . . . [and] also requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk.

Helling, 509 U.S. at 36. Regarding the subjective factor, as noted above, Plaintiff must demonstrate that prison authorities were "deliberately indifferent" to his plight. *Id.* If the institution has adopted a smoking policy, this "will bear heavily on the inquiry into deliberate indifference." *Id.*

Plaintiff has not alleged sufficient facts to satisfy the objective component of Eighth Amendment analysis. Plaintiff alleges he was housed at FCI from January 28, 1998 to September 20, 2004 (Doc. 25 at 9) and has identified numerous areas within the prison where he was subjected to ETS, including the unit porch, commissary pen, inmate cafeteria line, educational porch, leisure center, the Unicor break area, and inside his non-smoking unit. However, Plaintiff has not alleged any facts indicating how much or how often inmates smoked inside his unit in violation of the non-smoking policy. In addition, many of the areas of which Plaintiff complains are outdoors, and Plaintiff has failed to establish how smoking in those areas could expose him to unreasonably high ETS levels or place him at a risk, so grave, that it would violate contemporary standards of decency to expose anyone unwillingly to such a risk. Indeed, exposure to second-hand smoke is an ordinary consequence of everyday life for non-prisoners, as office buildings, restaurants, and other public facilities often have designated smoking areas at or near their entrance. *Compare* Oliver v. Deen, 77 F.3d 156, 158 (7th Cir.1996) (holding that passive tobacco exposure was not a serious threat to an inmate who had a smoking cellmate for 133 days, even though the plaintiff suffered from mild asthma) *with* Helling, 509 U.S. at 35 (concluding that prisoner stated claim where he was forced to share cell with a five-pack-per-day smoker) and Rochon v. City of Angola, 122 F.3d 319, 320 (5th Cir. 1997) (threat to future health existed where inmate was "required to live and work in 'environments filled with tobacco smoke'").

Additionally, Plaintiff has not established that the injury to his health was actually caused by exposure to ETS. Plaintiff admits that he had asthma prior to his incarceration at FCI, and he has not established that the need for an inhaler necessarily resulted from his exposure to ETS, as it is not uncommon for asthmatics to use inhalers. Similarly, Plaintiff has failed to allege a causal connection between the ETS exposure and his respiratory problems.

Plaintiff has also failed to satisfy the subjective component of the Eighth Amendment analysis. Plaintiff must allege facts showing that *each* Defendant named acted with deliberate indifference, which means that the Defendant had subjective knowledge of a risk of serious harm and disregarded that risk by conduct that was more than mere negligence. Brown v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004).

Regarding Defendants Raines, Snell, and Bart, Plaintiff alleges that he "verbally complained" to them about other inmates' disregard of the non-smoking policy. However, according to Plaintiff's complaint, most of his exposure to ETS occurred when he was not in his unit. Plaintiff does not allege that these three Defendants knew of his other exposure to ETS, that they knew he suffered from asthma, or that they knew of and disregarded a risk of serious harm to Plaintiff's health. Moreover, Plaintiff admits that these three Defendants sought his assistance in enforcing the non-smoking policy, by asking Plaintiff to identify those inmates who were violating it. Nonetheless, even if Defendants failed to enforce the non-smoking policy as alleged by Plaintiff, at most, Plaintiff has established that they were negligent. Mere negligence, however, is insufficient to establish deliberate indifference. Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003). Unless Plaintiff alleges sufficient facts establishing that he was exposed, with deliberate indifference, to ETS levels that unreasonably placed him at risk of harm to his future health, this action is subject to dismissal.

Regarding Defendants Barron and Wetzel, Plaintiff has alleged only that he filed a formal complaint with Defendant Barron that BOP officials at FCI Marianna were "intentionally violating" P.S. 1640.04. Plaintiff's statement of facts does not mention Defendant Wetzel at all, but Plaintiff admits that a smoking policy was in place, which is a factor the court will consider "heavily" in analyzing Plaintiff's claim. In addition, Plaintiff alleges no facts indicating that Defendant Barron or Wetzel knew about Plaintiff's asthma or that they had subjective knowledge of any risk of serious harm to Plaintiff. Indeed, even when Plaintiff filed grievances about the matter, he did not note any particular susceptibility to ETS, nor mention his asthmatic condition or any causal connection between ETS exposure and his health problems. Unless additional facts exist, Plaintiff should drop Defendants Barron and Wetzel from this lawsuit.

With regard to Defendants Holt and Lappin, Plaintiff has failed to state a claim. Plaintiff apparently seeks to hold them liable on a respondeat superior theory of liability. It is well established that supervisory officials are not liable under section 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability. *See* Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003) (internal quotation marks and citations omitted). Supervisory liability may occur, however, either when the supervisor personally participates in the alleged

unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation. *Id.* (citation omitted). This connection may be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so, or when a supervisor's custom or policy 'result[s] in deliberate indifference to constitutional rights' or when facts support 'an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.'" *Id.* (internal quotation marks and citations omitted); Wayne v. Jarvis, 197 F.3d 1098, 1105 (11th Cir. 1999), *cert. denied*, 120 S. Ct. 1974, 146 L. Ed. 2d 804 (2000).

Isolated incidents are generally insufficient to establish a supervisor's liability, and filing a grievance with a supervisory person does not alone make the supervisor liable for the allegedly violative conduct brought to light by the grievance, even if the grievance is denied. Wayne, 197 F.3d at 1106; Weaver v. Toombs, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd*, 915 F.2d 1574 (6th Cir. 1990); *see also* Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984). Knowledge imputed to the supervisor "must be so pervasive that the refusal to prevent harm rises to the level of a custom or policy of depriving inmates of their constitutional rights." Tittle v. Jefferson County Com'n, 10 F.3d 1535, 1542 (11th Cir. 1994). The failure to act or implement policy must be in the face of repeated violations or other indicators signifying a strong likelihood that the situation will recur. *See* Harris v. City of Marion, 79 F.3d 56, 58-59 (7th Cir. 1996). Supervisors are generally entitled to rely on their subordinates to respond appropriately to situations absent clear or widespread evidence to the contrary. "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." Cottone, 326 F.3d at 1360 (internal quotation marks and citation omitted).

In the instant case, Plaintiff does not allege that Defendants Holt and Lappin personally participated in the alleged unconstitutional conduct; his only allegation concerning them is that they "deliberately allowed" FCI Marianna officials to violate P.S. 1640 (Doc. 25 at 17). However, Plaintiff has stated no specific facts in support of that conclusory allegation. In fact, Plaintiff does not mention Defendants Holt and Lappin anywhere in his statement of facts. Although Plaintiff has alleged that violations of the policy at FCI were commonplace, he does not allege facts suggesting

that Defendants Holt and Lappin were aware of widespread policy violations. Plaintiff does not allege that they directed any subordinate to act unlawfully or knew that a subordinate would act unlawfully and failed to stop the subordinate from doing so. Likewise, Plaintiff does not allege the existence of a custom or policy of the BOP or FCI that resulted in deliberate indifference to Plaintiff's constitutional rights. If anything, these Defendants were aware of the BOP policy that <u>prohibited</u> the conditions of which Plaintiff complains, and the grievances submitted by Plaintiff show that it was BOP policy to discipline inmates found to be smoking in prohibited areas (Doc. 25, Exs. C, D). Therefore, Plaintiff should drop Defendants Holt and Lappin from this action.

Plaintiff should carefully review the foregoing to determine whether he desires to proceed with this action. If Plaintiff determines that he does not, he should file with the court a notice of voluntary dismissal. If Plaintiff chooses to proceed with this action, he must completely fill out a new civil rights complaint form, marking it "**Third Amended Complaint**." Plaintiff must limit his allegations to claims related to the same basic incident or issue and name as Defendants only those persons who are responsible for the alleged constitutional violations. Plaintiff must place their names in the style of the case on the first page of the civil rights complaint form, and include their addresses and employment positions in the "Parties" section of the form. In the statement of facts, Plaintiff should clearly describe how each named Defendant is involved in each alleged constitutional violation, alleging the claims as to each Defendant in separately numbered paragraphs and including specific dates and times of the alleged unconstitutional acts. If Plaintiff cannot state exactly how a particular Defendant harmed him, he should delete or drop that person as a Defendant from his complaint. Plaintiff's request for relief should be limited to only that which he could recover if he succeeds on his claims. Plaintiff is advised that once an amended complaint is filed, all earlier complaints and filings are disregarded. Local Rule 15.1, Northern District of Florida. Thus, Plaintiff must resubmit with his amended complaint any attachments he wishes the court to consider.

Accordingly, it is **ORDERED**:

1. The clerk of court is directed to forward to Plaintiff a civil rights complaint form for use by prisoners in actions under 42 U.S.C. § 1983. This case number should be written on the form.

Case No.: 5:05cv160/SPM/EMT

2.      Within **THIRTY (30) DAYS** from the date of docketing of this order, Plaintiff shall file an amended civil rights complaint, which shall be typed or clearly written, submitted on the court form, and marked "Third Amended Complaint." In the alternative, Plaintiff shall file a notice of voluntary dismissal within the same time period.

3.      Failure to comply with this order may result in dismissal of this action.

**DONE AND ORDERED** this 14th day of September 2006.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**